[Cite as *Murphy v. Hall*, 2019-Ohio-188.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| JAMES E. MURPHY, JR., et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | CASE NO. 2017-T-0114 |
| MARGARET A. HALL, INDIVIDUALLY AND IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF CATHERINE M. MURPHY, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Probate Division, Case No. 2017 CVA 0012.

Judgment:  Reversed and remanded.


*Jennifer M. Mitchell*, Dinsmore & Shohl, LLP, 1900 Chemed Center, 255 East Fifth Street, Cincinnati, OH   45202 (For Defendants-Appellees, Fidelity Investments Institutional Operations Company, Inc. and The Mercy Health Partners Retirement Plan Committee).

*Douglas J. Neuman*, Neuman Law Office, LLC, 761 North Cedar Street, #1, Niles, OH 44446 (For Defendant-Appellee, Margaret A. Hall).

*William M. Flevares*, Flevares Law Firm, LLC, 1064 Niles Cortland Road, N.E., Warren, OH  44484 (For Plaintiffs-Appellants).


COLLEEN MARY O'TOOLE, J.

{¶1}   Appellants, James E. Murphy, Jr., Donna Grombacher, Jeanne Murphy, Martin Murphy, Sr., Patrick Murphy, and Sean Murphy, appeal from the November 21,

2017 judgment of the Trumbull County Court of Common Pleas, Probate Division, in favor of appellees, Margaret A. Hall, Fidelity Investments Institutional Operations Company, Inc., and The Mercy Health Partners Retirement Plan Committee.[1] Appellants assert that the trial court's judgment is against the manifest weight of the evidence.  For the following reasons, we reverse and remand.

{¶2}   On February 24, 2017, appellants filed a complaint against appellees seeking a declaration that all seven siblings of the decedent are the beneficiaries of her Fidelity 403(b) account.  Appellants argued that the decedent's change of beneficiary form, leaving each of the seven siblings 14 percent interest in her 403(b) account, should be followed because it reflected her clearly expressed intent that the account be a non-probate asset.

{¶3}   On May 24, 2017, Hall filed an answer arguing that all the proceeds of the 403(b) account should be paid to The Estate of Catherine M. Murphy, which named Hall as sole beneficiary. Hall argued that the change in beneficiary form did not represent the decedent's intent and was not properly executed.

{¶4}   On October 16, 2017, the court heard testimony from Stella Maiorana, a friend of the decedent, who completed the change of beneficiary form.  First, Maiorana testified that, as she understood the decedent's telephone call to Fidelity Investments on November 26, the decedent and Fidelity discussed the 403(b) account and the decedent indicated that it would be acceptable for the 403(b) to be paid to Hall. (T.p. 147.)  Maiorana also testified that she "may have filled the forms out wrong" by including all the siblings' names. (T.p. 148.)

---

1. Hall is a sibling of the decedent, Catherine M. Murphy.

{¶5} However, Maiorana then testified that in the November 26 telephone call, "[I]t sounded as though from what the lady on the phone said that she wanted to make a change from what she had." (T.p. 148-149.) Maiorana stated that because the decedent did not have the capability to go into the computer and make that change, "things would stay the way that they are" unless the decedent completed a change of beneficiary form. (T.p. 149.)

{¶6} Thus, after this telephone call, Maiorana completed the change of beneficiary form to include all the siblings as equal beneficiaries of the 403(b), so that "things could be the way Cathy wanted them to be." (T.p. 149-150.) The decedent read the form before signing it. (T.p. 133.) Further, Maiorana observed that the decedent's mental state was "clear" at the time that the decedent signed the form. (T.p. 133.)

{¶7} Finally, Maiorana testified that the decedent went online at the library a month before her death to designate a beneficiary for her Fidelity 403(b) account. (T.p. 152-153.) The decedent designated this beneficiary as the trust under her will. However, the decedent failed to create a trust, leading Fidelity to disregard the designation.

{¶8} On November 21, 2017, the trial court entered judgment, finding that proceeds from the 403(b) account should be paid to The Estate of Catherine M. Murphy. Applying the clearly expressed intent test, the court found that the change of beneficiary form did not reflect the decedent's intent because "Maiorana completed the change of beneficiary form without explicit direction from the decedent."

{¶9} On appeal to this court, appellants raise the following sole assignment of error:

3

{¶10} "The trial court's judgment entry in favor of appellees-defendants is against the manifest weight of the evidence."

{¶11} Appellants contend that the manifest weight of the evidence does not support the court's finding that the 403(b) account is part of the decedent's estate.

{¶12} "'[T]he Supreme Court of Ohio has clarified the analysis used to determine whether judgments in civil cases are against the manifest weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, * * *, 2012-Ohio-2179, ¶12-23, (* * *). In *Eastley*, the Supreme Court noted that most of Ohio's appellate courts applied the analysis set forth in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, * * *, (* * *). *Eastley* at ¶14. In *C.E. Morris*, the court held: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris* at the syllabus. As the court in *Eastley* observed, this is the standard applicable to determining the sufficiency of the evidence underpinning a judgment. *Id.* at ¶14, * * *. The court held that the proper analysis for determining challenges to the manifest weight of the evidence is the same in civil and criminal cases, and that *State v. Thompkins*, 78 Ohio St.3d 380, * * *, (* * *) (1997) applies to both. *Id.* at ¶17-20. The court quoted with approval the following language used by the Ninth Appellate District:

{¶13} "'"The (reviewing) court (* * *) weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the (finder of fact) clearly lost its way and created such a manifest miscarriage of justice that the (judgment) must be reversed and a new trial ordered."' (Alterations made in *Tewarson*) *Tewarson v. Simon,* 141 Ohio App.3d 103,

4

115, * * *, (* * *)(* * *) (9th Dist.2001) (* * *), quoting *Thompkins,* 78 Ohio St.3d at 387, * * * (* * *), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, * * *, (* * *)(* * *) (1st Dist.1983). (Parallel citations omitted.) *Eastley* at ¶20."

{¶14} "'The court in *Eastley* further observed that in weighing the evidence in civil cases, courts of appeals must make every presumption in favor of the finder of fact, and construe the evidence, if possible, to sustain the judgment of the trial court. *Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, * * *, (* * *) (1984). (Parallel citations omitted.) *Avery Dennison Corp. v. Transact Techs., Inc.,* 11th Dist. Lake No. 2012-L-132, 2013-Ohio-4551, ¶20-22." (Parallel citations omitted.) *Patterson v. Godale,* 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-5615, ¶12-14.

{¶15} In support of their sole assignment of error, appellants argue the trial court made its decision using statements of fact unsupported by evidence, and thus failed to properly apply the clearly expressed intent test. First, appellants argue that Maiorana completed the change in beneficiary form with the decedent's explicit direction. They allege that the court gave little weight to the totality of Maiorana's testimony, which states that the decedent read the change of beneficiary form before signing it and that Maiorana believed that the form represented the decedent's wishes.

{¶16} Further, appellants argue that the November 26 recorded telephone call to Fidelity does not indicate the decedent's acceptance that the 403(b) account be paid into her estate upon her death. Instead, they allege that the call's purpose was to decide if Hall would be designated beneficiary of the account and subsequently divide

5

out the equal shares between her and her six other siblings, or if, alternatively, all seven siblings would be listed as beneficiaries of the account.

{¶17} We find that the trial court's judgment was against the manifest weight of the evidence. Although we construe the record in favor of the trial court's decision, the weight of the evidence shows that the change of beneficiary form was the decedent's clearly expressed intent.

{¶18} First, although Maiorana's testimony admits the possibility that she may have incorrectly filled out the change of beneficiary form, it does not support the trial court's finding that "Maiorana completed the change of beneficiary form without explicit direction from the decedent." Maiorana testified that she completed the change of beneficiary form so that "things could be the way Cathy wanted them." She also testified that the decedent's mental state was clear when she examined the change of beneficiary form, and that the decedent read and signed the form. Thus, the form represented the clearly expressed intent of the decedent, even if Maiorana failed to properly execute the form.

{¶19} Further, the court incorrectly focused solely on the decedent's indicated acceptance when Fidelity informed her that the 403(b) account would be left to the estate, and therefore to Hall. Looking at the totality of the circumstances, Maiorana's testimony shows that even though the decedent indicated her acceptance, the decedent ultimately wanted to "make a change" from the 403(b)'s prior designation. Moreover, the decedent's intent to change the 403(b)'s account designation is supported by her visit to Fidelity's website a month before her death. During this visit, she unsuccessfully tried to change the 403(b) designation online.

{¶20} For the foregoing reasons, appellants' sole assignment of error is well-taken. The judgment of the Trumbull County Court of Common Pleas, Probate Division, is reversed and the matter is remanded for further proceedings consistent with this opinion.

THOMAS R. WRIGHT, P.J., concurs,

TIMOTHY P. CANNON, J., concurs with a Concurring Opinion.

_____

TIMOTHY P. CANNON, J., concurring.

{¶21} I concur with the opinion of the majority but write separately to clarify important portions of the record that should not be overlooked.

{¶22} First, Attorney Garris, the attorney for the decedent, testified that Catherine wanted numerous people to receive her assets upon her death, with the primary beneficiary being her sister, Margaret Hall. Attorney Garris testified as follows:

> * * * She expressed to me that there was either a death benefit or a retirement benefit of which there were two parts. The greater part would be shared amongst siblings – and it might have been a niece or nephew she was treating as a sibling. I'm not sure – but the smaller part would be shared amongst nieces and nephews, and maybe someone a niece or nephew or someone that was being treated as a niece or nephew that was a great-niece or nephew. * * *

{¶23} Attorney Garris, in a tape-recorded phone call prior to the decedent's death, informed Fidelity that Catherine had recently updated her beneficiary form, but that was before she met with Attorney Garris. He stated: "She designated pursuant to her will, but that's not what she wants." The trial court noted that in a conversation with

7

Fidelity, Catherine was informed that the proceeds would be payable to "her estate" and that "she indicated such a transfer was acceptable." However, a review of that call establishes Fidelity was actually explaining that if there was *no* beneficiary designation, the proceeds would be payable to the estate. While Catherine acknowledged this fact, nothing in that recorded call suggests this is what Catherine wanted. The great lengths to which Attorney Garris went to get a form to Catherine so she could change the designation of beneficiary makes quite clear it was not "acceptable" to her. In fact, while Margaret was the sole beneficiary under the will, Attorney Garris explained this was done "based on having beneficiary designations on other assets."

{¶24} The trial court made a finding that Stella Maiorana completed the beneficiary designation without explicit direction from the decedent. She clearly testified, however, that "what you have in front of you [the beneficiary form] is what she wanted." Further, the trial court notes Ms. Maiorana's statement that "she may have made a mistake" when she completed the form. However, while Ms. Maiorana acknowledged it was possible she made a mistake, she testified that each page of the beneficiary form was reviewed by Catherine and acknowledged by Catherine to be what she wanted.

{¶25} The testimony and phone call from Attorney Garris, together with the testimony that the decedent was able to review each page of the beneficiary form in question, overwhelmingly establish the "clearly expressed intent" of the decedent to have the proceeds distributed in the manner set forth in the beneficiary form she signed.

{¶26} As a final note, there appears to be a concern about how to distribute the unaccounted for 2% of the proceeds. As there was no designated beneficiary for that portion of the proceeds, it should be paid to the decedent's estate.