[Cite as *Murphy v. Hall*, 2020-Ohio-163.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| JAMES E. MURPHY, JR., et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2019-T-0022** |
| MARGARET A. HALL, INDIVIDUALLY AND IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF CATHERINE M. MURPHY, et al., | : | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Probate Division, Case No. 2017 CVA 0012.

Judgment: Affirmed.

*William M. Flevares*, Flevares Law Firm, LLC, 1064 Niles Cortland Road, N.E., Warren, OH 44484 (For Plaintiffs-Appellants).

*Douglas J. Neuman*, Neuman Law Office, LLC, 761 North Cedar Avenue, Suite 1, Niles, OH 44446 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1} Plaintiffs-appellants, James E. Murphy, Jr., Martin W. Murphy, Sr., Jeanne M. Murphy, Patrick B. Murphy, Donna M. Grombacher, and Sean M. Murphy, appeal the March 14, 2019 Amended Judgment Entry of the Trumbull County Court of Common Pleas, Probate Division, ordering the distribution of 403(b) retirement account funds to them and to appellee, Margaret A. Hall, and the Estate of Catherine M. Murphy. For the

following reasons, we affirm the decision of the court below.

{¶2} On February 24, 2017, the plaintiffs filed a Complaint for Declaratory Judgment in the Trumbull County Court of Common Pleas, Probate Division, against Hall, individually and in her capacity as Executrix of the Estate of Murphy, Fidelity Investments Institutional Operations Company, Inc., and The Mercy Health Partners Retirement Plan Committee. The plaintiffs and Hall are siblings of the decedent. The plaintiffs sought a declaration that they are the true owners of the decedent's Fidelity Investment 403(b) plan account managed by Mercy Health Partners.

{¶3} On May 24, 2017, Hall filed her Answer which contained the following: "As an affirmative defense, the Defendant states that she is entitled to a set-off against the claims of the Plaintiffs from life insurance proceeds that the Defendant has given to the Plaintiffs."

{¶4} On October 16-17, 2017, the case was tried before the court. During the course of the trial, the following relevant testimony was given:

{¶5} Hall testified that the decedent had two Cigna life insurance policies of which she was the beneficiary: a Basic Benefit policy worth about $94,000 and a Supplemental Benefit policy worth about $187,000. The decedent indicated to Hall that the larger policy was for her siblings and that the smaller was to be divided between her nieces and nephews. During the decedent's final hospitalization, an attempt was made by a friend of the decedent, Stella Maiorana, to have the siblings, nieces, and nephews added to the policies as beneficiaries. However, "the life insurance * * * told her she [Maiorana] wasn't allowed to list that many people, because she [the decedent] had so many nieces and nephews and brothers and sisters to list on the insurance, that they

2

didn't have room for them. * * * So she put just my name on it for both life insurance policies and then I would divide them."

{¶6} In October 2015, Hall sent checks to the siblings and the nieces and nephews dividing the proceeds of the two policies. Although not directed to do so by the terms of the policies or the decedent's will, Hall testified: "If it's somebody's last wish, you do it."

{¶7} The decedent's attorney, Joshua Garris, testified that the decedent expressed her wish "to benefit her siblings, nieces, nephews, but primarily her sister Peggy [Hall]." The decedent also expressed "that there was either a death benefit or a retirement benefit of which there were two parts. The greater part would be shared amongst siblings * * * but * * * the smaller part would be shared amongst nieces and nephews."

{¶8} Maiorana testified that the decedent "wanted her family to have everything they possibly could" monetarily and she "wanted to make sure that Peggy [Hall] was going to be set."

{¶9} Martin Murphy, one of the decedent's siblings, testified that, during the final hospitalization, there was a paper stating that the insurance was to be divided between the nieces and nephews while the Fidelity 403(b) was to be divided evenly between the siblings.

{¶10} Sean Murphy, one of the decedent's siblings, testified that the decedent told him directly that the "retirement," i.e., the 403(b), was going to her siblings. He "had thought Cigna was going to go to the kids [nieces and nephews], but [he] didn't know that for sure a hundred percent."

{¶11} James Murphy, one of the decedent's siblings, testified regarding a meeting with the decedent at Garris' office at which she stated, "I want the 403 to go to my brothers and sisters, the insurance policy goes to my nieces and nephews."

{¶12} On November 21, 2017, the probate court issued a Judgment Entry, denying the Complaint for Declaratory Judgment. The court's Entry states, in relevant part:

> The Plaintiffs argue that the change of beneficiary designation signed by Catherine M. Murphy shortly before her death, which leaves all seven of her siblings fourteen percent (14%) of the account, and which was received by Fidelity Investments Institutional Operations Company, Inc. after her death, should be followed. Defendant Hall argues that all of the proceeds of the 403(b) account should be paid to The Estate of Catherine M. Murphy, which had been the designation of the decedent prior to the execution of the change of beneficiary designation. The Court finds that the appropriate test to determine how the proceeds of the 403(b) account should be transferred is the clearly expressed intent test. * * * The Court finds that Margaret Hall reliably testified that the decedent intended the 403(b) account to go to her and that the smaller insurance policy was to be divided between the siblings and the nieces and nephews of the decedent. The Court finds that the change of beneficiary designation form does not accurately reflect the intent of the decedent.

{¶13} The plaintiffs appealed the denial of the Complaint, arguing that the probate court's judgment was against the weight of the evidence.

{¶14} On January 22, 2019, this court reversed the probate court's decision for the reason that "the weight of the evidence shows that the change of beneficiary form was the decedent's clearly expressed intent," and remanded for further proceedings. *Murphy v. Hall*, 11th Dist. Trumbull No. 2017-T-0114, 2019-Ohio-188, ¶ 17.

{¶15} At a status conference subsequent to the remand, the parties agreed that no further testimony would be necessary before a final disposition could be made.

4

{¶16} On March 12, 2019, the probate court issued its Judgment Entry which it subsequently modified by an Amended Judgment Entry issued on March 14, 2019. The court ruled as follows:

> Because this Court [previously] ruled that the entirety of the 403(b) account was an asset of the Estate in its November 21, 2017 Judgment Entry, this Court did not address the affirmative defense of Defendant Margaret Hall that she is entitled to a set-off against the claims of the Plaintiffs from life insurance proceeds that she gave to the Plaintiffs. The opinion of the Eleventh District Court of Appeals similarly did not address the affirmative defense. The Court finds that it is now appropriate to rule on the affirmative defense of Defendant Hall.

> Pursuant to Civ.R. 8(C), when a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the Court, if justice so requires, shall treat the pleading as if there had been a proper designation. The Court finds that justice requires it to construe the affirmative defense contained in Paragraph 21 of Defendant Hall's Answer as a counterclaim for set-off.

> The Court finds that Defendant Hall believed that the estate plan of the decedent was for Defendant Murphy to pay equal shares of the $187,000.00 Cigna life insurance benefit to each of the decedent's siblings, to pay equal shares of the $94,000.00 Cigna life insurance benefit to the decedent's nieces and nephews, and to retain the entirety of the 403(b) account for her own use.

> The Court finds that, even though Defendant Hall was actually entitled to the entire value of both Cigna life insurance benefit payments, Defendant Hall paid the appropriate portions of the money to her siblings and to the nieces and nephews of the decedent to comply with the estate plan of the decedent. The Court finds that Defendant Hall paid to each of the Plaintiffs herein $26,857.14 from the Cigna life insurance benefit in compliance with what she believed was the decedent's estate plan. The Court finds that Defendant Hall believed that she was required to make the payments to the Plaintiffs and took care to send each check by certified mail and retain copies for her records.

> The Court finds that, while Defendant Hall also made payments to the decedent's nieces and nephews in compliance with what she believed was the estate plan of the decedent even though

5

the policy was made payable to her, those nieces and nephews are not parties to this action.

Based upon the decision of the Eleventh District Court of Appeals, Defendant Hall was mistaken as to the estate plan of the decedent. The Eleventh District Court of Appeals ruled that the decedent actually intended for 14% of the 403(b) account to be paid to each of her seven siblings as beneficiaries.

The Court finds that the evidence is clear that Defendant Hall is the person with whom the decedent had the closest relationship and that Defendant Hall was the decedent's primary caregiver during her illness. The Court finds that the clear intention of the decedent was that Defendant Hall would receive the bulk of her assets. This intention that Defendant Hall be the primary beneficiary of the decedent's assets is clear from the evidence presented at the hearing, including the testimony of Joshua Garris, Esq. * * *. If the Court fails to grant the counterclaim, the Plaintiffs would receive a windfall, and the inequitable result would be that Defendant Hall would not receive the bulk of the decedent's assets as the decedent intended.

The Court finds that, if the decedent intended for the 403(b) account to be paid to each of her seven siblings equally, as the Eleventh District Court of Appeals has ruled, she did not intend for the $187,000.00 Cigna life insurance benefit to be paid to each of her seven siblings equally and, instead, intended for the $187,000.00 Cigna life insurance benefit to be retained by Defendant Hall in its entirety.

The Court finds that Defendant Hall is entitled to a set-off. The Court finds that it is necessary and appropriate that the money which was erroneously paid to the Plaintiffs in compliance with the decedent's estate plan be returned to Defendant Hall now that the Eleventh District Court of Appeals has decided that the decedent's estate plan was different than what Defendant Hall understood it to be.

{¶17} Accordingly, the probate court ordered that the Fidelity 403(b) account be divided amongst the decedent's seven siblings with each sibling receiving 14%. The amounts received by the six plaintiffs was reduced by $26,857.14 which was added to Hall's amount. The remaining 2% was ordered to be paid to Hall's estate.

6

{¶18} On April 8, 2019, the plaintiffs filed a Notice of Appeal. On appeal, they raise the following assignments of error:

{¶19} "[1.] The trial court abused its discretion when it *sua sponte* construed defendant-appellee Hall's affirmative defense as a counterclaim."

{¶20} "[2.] The trial court erred as a matter of law when it *sua sponte* construed defendant-appellee Hall's affirmative defense as a counterclaim."

{¶21} "[3.] The trial court's entry treating defendant-appellee Hall's affirmative defense of set-off as a counterclaim was against the manifest weight of the evidence."

{¶22} The plaintiffs' first two assignments of error challenge the probate court's decision to construe Hall's affirmative defense of setoff as a counterclaim. The arguments raised under each assignment are similar. The difference lies with the standard of review to be applied. The first assignment claims the trial court abused its discretion in the application of Civil Rule 8(C). Under this deferential standard, "[i]t is not sufficient for an appellate court to determine that a trial court [erred] simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by countervailing arguments." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. The second assignment asserts an error of law which requires this court to consider the decision de novo, i.e., "the appellate court must * * * independently determine, without deference to the conclusion of the trial court," whether its decision satisfied the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶23} In either case, the plaintiffs argue "the Trial Court overstepped its authority in general when it *sua sponte* designated Defendant-Appellee Hall's affirmative defense

7

of set-off as a counterclaim." Appellants' brief at 10. They note that the court "should have followed this Court's mandate and issued a judgment entry ordering Fidelity to distribute 14% of [the decedent's] 403(b) account to each of the six Appellants and Defendant-Appellee Hall with the remaining 2% to the Estate of Catherine M. Murphy." *Id.* at 7. Instead, they claim, the court acted as an advocate for Hall's interests. They note that Hall's affirmative defense does not contain a "short and plain statement of the claim" or a "demand for judgment" as required by Civil Rule 8(A) for counterclaims. *Id.* at 11. Moreover, the court's action failed to comply with the basic motion requirements of Civil Rule 7(B) ("a motion * * * shall state with particularity the grounds therefor") and "its timing was contrary to Civil Rule 15 given that it did not do this until after this Court remanded this case to the Trial Court." *Id.* at 6 and 10.

{¶24} Civil Rule 8(C) provides: "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation." It has been recognized generally that a claim for setoff should be raised as a counterclaim pursuant to Civil Rule 13(C) ("[a] counterclaim may or may not diminish or defeat the recovery sought by the opposing party"). *Kingston Natl. Bank v. Stulley*, 4th Dist. Pike No. 443, 1990 WL 155741, *5; *Indus. Fabricators, Inc. v. Natl. Cash Register Corp.*, 10th Dist. Franklin No. 83AP-13, 1984 WL 4669, *5 ("[p]ursuant to Civ.R. 13(C), a counterclaim is now any claim, including setoff or recoupment, which a defendant may have against a plaintiff"); Civ.R. 13, 1970 Staff Notes ("[t]he rule abolishes any distinction between such terms as set off or recoupment as distinguished from the term counterclaim itself").

{¶25} We note that several courts have adopted the plaintiffs' position that, in

8

order for an affirmative defense to be construed as a counterclaim, it must be properly pled and so construed in a timely manner. "This provision was intended to permit trial courts to forgive clerical errors made in designating defenses and counterclaims; it was not designed as a means by which a party could correct a substantive error in pleadings long after the time for amendment to those pleadings had passed." *Am. Outdoor Advertising Co., L.L.C. v. P & S Hotel Group, Ltd.*, 10th Dist. Franklin No. 09AP-221, 2009-Ohio-4662, ¶ 26; *BAC Home Loans Serv., L.P. v. Hall*, 12th Dist. Warren No. CA2009-10-135, 2010-Ohio-3472, ¶ 19 (the same). This position, however, has not been universally adopted. *See Eaton Corp. v. Taylor-Winfield Corp.*, 8th Dist. Cuyahoga No. 62361, 1993 WL 267113, *4 ("[a]lthough Civ.R. 8(A) requires a counterclaim to contain a demand for relief, lack of a demand is of no consequence when an affirmative defense is to be treated as a counterclaim").

{¶26} Given the particular circumstances of the present case, we find no reversible error in the probate court's decision to construe Hall's affirmative defense as a counterclaim. This court reversed the court's prior judgment as being against the weight of the evidence, specifically as to the decedent's intent regarding the distribution of the Fidelity 403(b) account. When a judgment is reversed as being against the weight of the evidence, the proper procedure on remand is to hold a new trial. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 22. This court is aware of no rule that prevents the raising of supplemental claims when a case is remanded for a new trial. *See, e.g., Rejas Invests. v. Natl. City Bank*, 2d Dist. Montgomery No. 23349, 2010-Ohio-5163, ¶ 47 (affirming the trial court's decision to grant a jury demand contained in supplemental counterclaims raised on remand); Civ.R. 13(F) ("[w]hen a pleader fails to

9

set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment"); Civ.R. 15(E) ("[p]ermission [to file supplemental pleadings] may be granted even though the original pleading is defective in its statement of a claim for relief or defense").

{¶27} Nor do we find error in the probate court's decision to construe the affirmative defense erroneous because it was taken sua sponte. This court's prior Opinion established as the law of the case that the decedent's intent with respect to the distribution of the 403(b) account was reflected in the change of beneficiary form. *Murphy*, 2019-Ohio-188, at ¶ 17. Neither this court nor the probate court considered or made any ruling regarding the distribution of the Cigna policies. Given that the lower court's prior judgment denied the plaintiffs' claim for declaratory judgment, there was no reason for either court to address what effect payment of the Cigna policies would have had on a judgment in the plaintiffs' favor. The issue was raised in Hall's answer and was litigated at trial. Virtually every witness testified regarding the policies and documentary evidence of their value and of the distribution to the siblings, nieces, and nephews was introduced. Rather than hold a new trial, however, the parties agreed that no further testimony would be necessary in order for a final disposition to be rendered. The plaintiffs may have believed that the court's only option on remand was to enter judgment in their favor, but that was not the case.

{¶28} The first two assignments of error are without merit.

{¶29} In the third assignment of error, the plaintiffs argue that the probate court's decision that Hall was entitled to a setoff in the amount of the insurance distribution to the siblings was against the manifest weight of the evidence. We disagree.

10

{¶30} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Citation omitted.) *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 12. Being "mindful of the presumption in favor of the finder of fact," the reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" (Citations omitted.) *Id.* at ¶ 21, 20.

{¶31} Hall's distribution of the proceeds from the Cigna Supplemental Benefit policy valued at $187,000 to the plaintiffs does not constitute a setoff as understood in Ohio law. "The right to setoff mutual debts exists as a remedy under Ohio law." *Lewis v. United Joint Venture*, 691 F.3d 835, 839 (6th Cir.2012). It has been defined as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Witham v. S. Side Bldg. & Loan Assn. of Lima, Ohio*, 133 Ohio St. 560, 562, 15 N.E.2d 149 (1938); *In re U.S. Aeroteam, Inc.*, 327 B.R. 852, 861 (S.D.Ohio 2005), citing *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) ("[s]etoff is a doctrine that allows entities who owe money to each other to cancel out or apply their mutual debts against each other thereby avoiding the 'absurdity of making A pay B when B owes A'") (citation omitted); *King v. King*, 11th Dist. Geauga No. 2011-G-3046, 2013-Ohio-432, ¶ 33-34.

{¶32} Although Hall's defense was denominated a "set-off" and the probate court purported to construe it thus as a counterclaim, the court's Entry demonstrates it was

11

contemplating another remedy. The court's Entry frankly states that, "even though Defendant Hall was actually entitled to the entire value of both Cigna life insurance benefit payments, [she] paid the appropriate portions of the money to her siblings * * * in compliance with what she believed was the decedent's estate plan." By estate plan, the court is apparently referencing the decedent's desire to make Hall the primary beneficiary of her estate or, in the court's words, that Hall should "receive the bulk of her assets." This overarching purpose, according to the lower court's construal of the evidence, was frustrated by the decedent's own conduct in executing the change of beneficiary form shortly before her death. Hall "was mistaken as to the estate plan of the decedent," not with respect to her being the primary beneficiary, but with respect to the 403(b) account comprising the bulk of those assets that she was to receive. Accordingly, the court concludes, if it failed "to grant the counterclaim, the Plaintiffs would receive a windfall, and the inequitable result would be that Defendant Hall would not receive the bulk of the decedent's assets."

{¶33} The plaintiffs argue "[t]his court's decision [in *Murphy*, 2019-Ohio-188] that it was [the decedent's] clearly expressed intent that the 403(b) account be split equally between Defendant-Appellee Hall and the six Appellants does not alter [the decedent's] intent that Defendant-Appellee Hall was to distribute the proceeds of the two Cigna life insurance policies in the manner that she did: One to Defendant-Appellee Hall and the six Appellants and the other to the nieces and nephews." Appellants' brief at 17.

{¶34} The probates court's judgment, however, does not rest on the decedent's specific intent as to the insurance policies. Per the terms of the policies, they were paid to Hall. The relevant intent, for the purposes of the court's judgment, was the decedent's

12

intent as to her estate plan. As determined by the lower court, the estate plan did not envisage the appellants receiving a share of the 403(b) account as well as the proceeds of the supplemental benefit policy inasmuch as Hall was intended to receive "the bulk" of decedent's assets. This conclusion is supported by the testimony of Garris, Maiorana, and Hall and is entitled to our deference. *Home Builders Assn. of Dayton and the Miami Valley v. Beavercreek*, 89 Ohio St.3d 121, 129, 729 N.E.2d 349 (2000) ("[w]hen reaching a factual determination, the trial court is in the best position to evaluate the testimony of witnesses and the evidence presented").

{¶35} Furthermore, we note that the probate court's focus on the decedent's broad intent regarding her estate is not inconsistent with the equitable nature of restitution which may be applied in circumstances where the retention of a benefit by a party would be unjust and/or where a party is entitled to compensation for a benefit conferred on another. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20-21; *Resco Holdings, L.L.C. v. AIU Ins. Co.*, 2018-Ohio-2844, 112 N.E.3d 503, ¶ 41 (8th Dist.) ("equity gives the court flexibility to reach a just result depending upon the facts and circumstances of each case" and a reviewing court "will not disturb a trial court's exercise of its equity discretion absent an abuse of discretion").

{¶36} The third assignment of error is without merit.

{¶37} In their reply brief, the appellants attempt to raise a fourth assignment of error on the grounds that the probate court could not rely on the doctrine of mistake in rendering its judgment. We decline to address this argument as it is presented in a manner contrary to both the appellate rules and precedent. *Cleveland v. Dancy*, 8th Dist. Cuyahoga No. 107241, 2019-Ohio-2433, ¶ 36 ("[p]ursuant to App.R. 16(C), reply briefs

13

are to be used to rebut arguments raised in the appellee's brief; an appellant may not use a reply brief to raise new issues or assignments of error not addressed in the appellant's opening brief") (citation omitted).

{¶38} For the foregoing reasons, the Amended Judgment of the Trumbull County Probate Court is affirmed. Costs to be taxed against the appellants.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.